UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| DARIO OLIVAS, | Case No. 2:14-CV-1801 JCM (VCF) |
| Plaintiff(s), | ORDER |
| v. | |
| STATE OF NEVADA, ex rel, | |
| Defendant(s). | |

Presently before the court is defendants State of Nevada, *ex rel* the Nevada Board of Prison Commissioners; State of Nevada, *ex rel* the Nevada Department of Corrections (collectively, "the entity defendants"); Brian Sandoval; Adam P. Laxalt; Barbara Cegavske; James Cox; Dwight Neven; Anthony Scillia; Isidro Baca; Cole Morrow; Jerry Howell; Jennifer Nash (collectively, "the supervisory defendants"); and Nicholas Galbiso's motion to dismiss. (ECF No. 56). Plaintiff filed a response (ECF No. 57), to which defendants replied (ECF No. 58).

**I.   Facts**

This civil rights case arises out of a shooting incident that took place at High Desert State Prison ("HDSP") in Indian Springs, Nevada, to which plaintiff was an innocent bystander. (ECF No. 48). Plaintiff's fourth amended complaint alleges the following relevant facts:

On July 31, 2012, plaintiff was seated in a dining hall at HDSP eating his evening meal. *Id.* at 7. At the time, defendant Nicholas Galbiso ("CO Galbiso"), a corrections officer at the prison, was on duty in the dining hall as the "gun tower" officer, seated some fifteen to twenty feet off the floor, armed with a shotgun. *Id.* According to plaintiff, CO Galbiso was protected by concrete, steel, and shatter resistant windows while seated in the gun tower. *Id.* In addition to CO Galbiso, defendant "John Doe 1" was on duty in the dining hall as the floor officer, and defendants

"John Does 2-10" were on duty "either just outside the [dining] hall or in various other areas of HDSP." *Id.*

While plaintiff was seated and eating his meal, a lone, unarmed inmate stood and began "yelling, cursing and tossing [plastic dinner cups] up towards [CO] Galbiso," who was still situated inside the gun tower. *Id.* In response, CO Galbiso "stuck his shotgun out the window of the gun tower in an upward position and immediately fired a blank round as he and defendant "John Doe 1" yelled for inmates in the [dining] hall to get on the floor." *Id.* The order instructing inmates to get on the floor is commonly known as a "get down order," and is allegedly a long-standing Nevada Department of Corrections ("NDOC") and HDSP policy, practice, and custom. *Id.* at 5.

Upon hearing the "get down order," all inmates, including plaintiff, began moving to the floor except the lone, shouting inmate. *Id.* at 7. When the inmate did not comply with the "get down order" and continued shouting, CO Galbiso aimed his shotgun in the direction of the shouting inmate and fired two to three rounds of live birdshot pellets at the floor where the rest of the inmates were lying in compliance with the "get down order." *Id.* According to plaintiff, CO Galbiso's firing of the live rounds complied with NDOC's administrative regulation ("AR") 405 and HDSP's operations procedure ("OP") 405, which specify protocol for the use of force, including deadly force. *Id.* at 6.

Specifically, OP 405.02(7) provides that if an initial warning shot "fails to stop the prohibited activity, then live rounds may be fired into the ground near the problem inmates or disturbance." *Id.* The firing of live rounds into the ground is commonly referred to as firing "skip shots." *Id.* at 9. Plaintiff alleges that OP 405 was spawned from AR 405, and was promulgated by defendant NDOC Director James "Greg" Cox, defendant HDSP Warden Dwight Neven, defendants HDSP Associate Wardens Anthony Scillia, Isidro Baca, Cole Morrow, Jerry Howell, and Jennifer Nash. *Id.* at 6. Additionally, plaintiff alleges that OP 405 was sanctioned by the entity defendants and supervisory defendants Sandoval, Laxalt, and Cegavske. *Id.* at 9.

Plaintiff alleges that, under the circumstances, CO Galbiso was "well aware that he would likely cause substantial bodily harm to the inmates lying compliantly on the floor by firing skip shots," and in doing so "totally disregarded the imminent danger posed to the inmates lying on the

floor." *Id.* at 8. Indeed, plaintiff did suffer substantial bodily harm when he was struck by the shotgun pellets in various areas of his body, including his right eyeball. *Id.*

After the skip shots were fired, the lone inmate continued standing and shouting, and was eventually tackled to the ground by other "Doe" defendants. *Id.* Plaintiff and other injured inmates were then taken to the prison infirmary or other hospitals for treatment of their injuries. *Id.* A treating surgeon confirmed that plaintiff had sustained loss of sight in his right eye that would never be regained. *Id.* Plaintiff was given stitches and pain medication and sent back to HDSP. *Id.* Plaintiff's pain medication was later substituted by a "Doe" defendant, HDSP doctor, and the substitute medication was not effective in relieving his lingering pain. *Id.* at 9. Furthermore, plaintiff was never offered counseling following the traumatic event, nor was he given more effective pain medication. *Id.*

Plaintiff alleges that the supervisory defendants knew of other shooting incidents within the NDOC where the firing of "skip shots" resulted in harm to inmates complying with a "get down order." *Id.* at 9–10. Yet, even with this actual knowledge, plaintiff alleges defendants did nothing to "rectify the inherent and foreseeable conflict and danger posed by the ['get down order'] and the ['skip shot'] maneuver when the two are combined." *Id.* at 10.

Plaintiff was released from prison in June 2014. (ECF No. 20 at 4). Thereafter, plaintiff filed his original complaint in state court on October 1, 2014. (ECF No. 1-2). Defendants removed plaintiff's case to federal court on October 29, 2014. (ECF No. 1). Since removal, the court has granted plaintiff leave to amend his complaint multiple times. *See* (ECF Nos. 10, 28, 47). In the instant motion, defendants move to dismiss plaintiff's fourth amended complaint.

**II.     Legal Standard**

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

"Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678-79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.*

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged – but it has not shown – that the pleader is entitled to relief." *Id.* at 679. When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court held,

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id*.

**III. Discussion**

Plaintiff's fourth amended complaints sets forth ten causes of action. (ECF No. 48). Plaintiffs first, second, third, fourth, and tenth causes of action assert 42 U.S.C. § 1983 claims for

violation of plaintiff's Eighth Amendment rights against the entity defendants, supervisory defendants, CO Galbiso, "Doe" defendants 1-10, and "Doe" defendants 11-15, respectively. *Id.* Plaintiff's fifth, sixth, seventh, eighth, and ninth causes of action assert state law tort claims against CO Galbiso and the "Doe" defendants. *Id.*

Furthermore, plaintiff sues the supervisory defendants in their individual and official capacities. *Id.* Plainitff sues the entity defendants in their official capacities only. *Id.* Finally, plaintiff sues CO Galbiso and the "Doe" defendants in their individual capacities only. *Id.* Moreover, plaintiff requests multiple forms of relief, including money damages and injunctive/declaratory relief. *Id.* Defendants now move to dismiss each of plaintiff's claims on various grounds, which the court will now address. *See* (ECF No. 56).

As a preliminary matter, the court finds that plaintiff's claims against defendants in their official capacities must be denied as moot. Indeed, "[c]laims under § 1983 are limited by the scope of the Eleventh Amendment." *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997). Insofar as state actors are sued in their official capacities under § 1983, plaintiffs are entitled only to injunctive relief. *Id.*

While plaintiff does seek injunctive relief in addition to money damages, "'[o]nce an inmate is removed from the environment in which he is subjected to the challenged policy or practice . . . he no longer has a legally cognizable interest in a judicial decision on the merits of his claim.'" *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015) (quoting *Incumaa v. Ozmint*, 507 F.3d 281, 287 (4th Cir. 2007)). Therefore, because plaintiff was released from prison in June 2014, the court finds that plaintiff lacks standing to bring § 1983 claims against defendants in their official capacities.

Accordingly, plaintiff's first cause of action against the entity defendants acting in their official capacities must be dismissed in its entirety. Further, plaintiff's second cause of action must also be dismissed insofar as it is asserted against the supervisory defendants in their official capacities.

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 5 -

### a. *Plaintiff's remaining § 1983 Eighth Amendment claims*

Defendants argue that plaintiff's individual capacity § 1983 claims should be dismissed because defendants are entitled to qualified immunity. (ECF No. 56 at 4). 42 U.S.C. § 1983 allows suits against government officials in their individual capacities who, under color of law, violate individuals' constitutional rights. However, some government officials are protected from such suits based on a defense of qualified immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects law enforcement officers, including prison officials and guards, from civil damage suits resulting from discretionary acts unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.*

While courts ordinarily look to prior law to determine whether a right was clearly established at the time of the misconduct, that does not mean that the "very action in question [must have] previously been held unlawful." *Alexander v. Perrill*, 916 F.2d 1392, 1398 (9th Cir. 1990) ("[T]he law simply does not require that we find a prior case with the exact factual situation in order to hold that the official breached a clearly established duty."). Rather, qualified immunity is inappropriate where the preexisting law was sufficient to provide the defendant with "fair warning" that his conduct was unlawful. *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000).

Because the factual allegations and theories of liability as to each group of defendants vary between plaintiff's multiple § 1983 claims, the court's analysis of whether each group of defendants is entitled to qualified immunity necessarily varies as well. Accordingly, the court will assess whether the supervisory defendants, CO Galbiso, and the "Doe" defendants are entitled to qualified immunity in turn.

### i. *The supervisory defendants*

Plaintiff's second claim against the supervisory defendants is premised on the notion that these defendants violated plaintiff's Eighth Amendment rights when they promulgated the "skip shot" and "get down order" policies "with prior knowledge that they would essentially make targets out of uninvolved inmates complying with a ['get down order']." (ECF No. 48 at 12). Further, plaintiff argues that the supervisory defendants' actual knowledge of prior shooting

incidents under similar circumstances "would have made it plainly obvious to a reasonable policymaker" that these policies would continue to lead to the deprivation of constitutional rights. *Id.*

In their motion to dismiss, the supervisory defendants argue that they are entitled to qualified immunity because there was no clearly established law "prohibiting the creation of a policy that would allow prison staff to fire shotgun rounds at the floor instead of directly at inmates to restore order." (ECF No. 56 at 5). Accordingly, defendants argue, plaintiff cannot show that defendants violated a "clearly established" constitutional right when they promulgated the "skip shot" and "get down order" policies. *Id.*

Where claims against prison officials arise from the implementation of prison policies that lead to the deprivation of constitutional rights, district courts are required to find "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation" before denying prison officials qualified immunity. *Jeffers v. Gomez*, 267 F.3d 895, 914 (9th Cir. 2001) (quoting *Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (internal quotations omitted). Further, a prison official violates the Eighth Amendment when he or she "knows of and disregards an excessive risk to inmate health or safety." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)) (internal quotations omitted). "This standard requires that the official be subjectively aware of the risk; it is not enough that the official objectively should have recognized the danger but failed to do so." *Id.* (citation omitted).

Here, while it is true that the specific act of promulgating "skip shot" and "get down order" policies have not been previously found to be unconstitutional, the allegedly unconstitutional acts complained of need not be so exact in order to deny dismissal on qualified immunity grounds. *See Alexander*, 916 F.2d at 1398 ("[T]he law simply does not require that we find a prior case with the exact factual situation in order to hold that the official breached a clearly established duty.").

In this case, plaintiff asserts that the supervisory defendants knowingly promulgated two prison policies that, when used in conjunction with each other, would inevitably lead to the shooting of innocent bystanders, depriving them of their constitutional right to be free from cruel and unusual punishment. (ECF No. 48 at 12–13). Moreover, plaintiff submits that defendants had

actual knowledge of prior, similar shooting incidents that occurred as a result of the combined use of the "skip shot" and "get down order" policies and failed to take measures to prevent similar accidents from happening again. (ECF No. 48 at 12).

Indeed, the matter of *Delosh v. State Div. of Prisoners* concerned a similar shooting incident at HDSP just six months prior to the one in which plaintiff was injured, wherein one of HDSP's officers fired a "skip shot" at the ground where several inmates were lying. *See Delosh v. State Div. of Prisoners*, 2016 U.S. Dist. LEXIS (Dist. Nev. Jan. 22, 2016). As a result, the plaintiff in that case, who was not involved in the altercation that prompted the officer to fire the "skip shot," was injured by the ricocheting pellets of the shotgun blast. *See id.*

The court thus finds that the supervisory defendants were subjectively aware of the danger posed by the unrestrained, simultaneous use of the "skip shot" and "get down order" policies. The court further finds that the "skip shot" and "get down order" policies are indeed so deficient that they, themselves constitute "the moving force" behind the constitutional violation at issue in this case. *See Jeffers*, 267 F.3d at 914 (citation omitted). Therefore, the court finds that the supervisory defendants are not entitled to qualified immunity, and will deny their motion to dismiss on these grounds.

        *ii.    CO Galbiso*

Plaintiff's third cause of action alleges a § 1983 Eighth Amendment claim against CO Galbiso, asserting "deliberate indifference" and "excessive force" theories of liability for his role in issuing the "get down order" and firing the "skip shots" that injured plaintiff. (ECF No. 48 at 13). Plaintiff argues that "[i]n response to a minor disturbance by a lone inmate," CO Galbiso deprived plaintiff of his Eighth Amendment right to be free from cruel and unusual punishment when he fired "two to three shotgun blasts of live birdshot pellets into the bodies of [plaintiff] and other uninvolved inmates lying on the floor in compliance with the ['get down order']," thereby causing plaintiff to lose sight in his right eye. *Id.* at 13–14. Further, plaintiff alleges that CO Galbiso knew that firing a "skip shot" under these circumstances would result in substantial injuries to the compliant inmates. *Id.* Plaintiff asserts that CO Galbiso's actions were "patently unreasonable" and not taken in good faith. *Id.* at 14–15.

As previously stated, a prison official violates the Eighth Amendment when he or she "knows of and disregards an excessive risk to inmate health or safety." *Jeffers*, 267 F.3d at 914 (citation and internal quotations omitted). "This standard requires that the official be subjectively aware of the risk; it is not enough that the official objectively should have recognized the danger but failed to do so." *Id.* (citation omitted). Further, it is well-established that when an inmate alleges an Eighth Amendment violation for excessive force, the core inquiry is whether the force was applied in a good faith effort to maintain or restore discipline or was done maliciously and sadistically. *Whitley v. Albers*, 475 U.S. 312, 321 (1986); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).

In making this determination, the court may consider such factors as the extent of the injury suffered by the inmate, the need for the application of force, the amount of force used, the threat reasonably perceived by responsible officials, and any efforts made to temper the severity of the response. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). These factors may suggest "whether the use of force could plausibly have been thought necessary in a particular situation, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Id.*

Taking all plausible facts alleged by plaintiff as true, which the court is required to do at the motion to dismiss stage, the court finds that CO Galbiso's actions were not taken in a good faith effort to restore discipline. First, the injuries suffered by plaintiff were severe. Plaintiff alleges he has lost all sight in his right eye that will never be recovered. (ECF No. 48 at 8). Second, CO Galbiso used deadly force to subdue a lone, unarmed inmate who posed no immediate threat to CO Galbiso, who was securely positioned inside the gun tower. *Id.* at 7–8. The court finds that a responsible official would not have reasonably perceived a threat warranting the use of deadly force under these circumstances. Lastly, other than the use of the "get down order" prior to firing the "skip shots," CO Galbiso took no other, less forceful action to temper the severity of the situation. *Id.* at 14. Indeed, his issuance of the "get down order" prior to firing the "skip shots" actually made the harm caused by the situation worse.

James C. Mahan
U.S. District Judge

- 9 -

1         The court thus finds that CO Galbiso displayed wantonness with respect to the wholly unjustified infliction of harm to plaintiff, and will therefore deny dismissal of CO Galbiso on qualified immunity grounds.

### iii. "Doe" defendants 1-10

Plaintiff's fourth cause of action asserts a § 1983 Eighth Amendment claim against ten unnamed HDSP officers for their failure to stop CO Galbiso from firing live rounds at the compliant inmates. (ECF No. 48 at 15). Plaintiff avers that these "Doe" defendants "had chemical agents readily at their disposal as well as manpower consisting of other correctional officers nearby who could have easily brought the situation under complete control without the need for live gunfire." *Id.*

Defendants argue in their motion to dismiss that there was no established law at the time of the incident requiring prison officials to intervene in the middle of an ongoing altercation where a fellow officer uses force that may deprive inmates of their Eighth Amendment rights. (ECF No. 56 at 8). Therefore, defendants argue that "Doe" defendants 1-10 are entitled to qualified immunity based upon the threshold inquiry of whether their conduct violated plaintiff's "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. The court agrees.

Indeed, plaintiff fails to cite (and the court has been unable to find) any authority suggesting that there was a "clearly established" law at the time of the incident requiring "Doe" defendants 1-10 to stop CO Galbiso from firing the "skip shots" or take any other action in the middle of the ongoing disturbance. *See* (ECF No. 57). Instead, plaintiff's only argument against dismissal of "Doe" defendants 1-10 is that counsel for defendants do not purport to represent the "Doe" defendants. *Id.* at 8. Therefore, plaintiff argues, the court should not entertain any arguments made by defendants' counsel on the "Doe" defendants' behalf. *Id.*

However, plaintiff has cited no authority to support its proposition that defendants' counsel may not move to dismiss claims lodged against "Doe" defendants. Therefore, finding that defendants have sufficiently demonstrated that "Doe" defendants 1-10 are entitled to qualified immunity on plaintiff's fourth cause of action, the court will dismiss the claim.

####  iv.    *Doe defendants 11-15*

Plaintiff's tenth cause of action asserts a § 1983 Eighth Amendment claim against five unnamed HDSP medical staff for displaying deliberate indifference towards plaintiff's serious medical needs following the shooting incident. (ECF No. 48 at 21). Plaintiff alleges that these "Doe" defendants switched plaintiff's "prescribed pain medication to a less effective pain medication for cost saving purposes," disregarded plaintiff's request for follow-up treatment, and disregarded plaintiff's need for psychological treatment following the incident. *Id.*

Defendants argue in their motion to dismiss that plaintiff's tenth claim against "Doe" defendants 11-15 should be dismissed for failure to state a claim upon which relief can be granted. (ECF No. 56 at 9). Defendants argue that plaintiff's complaint contains only vague and conclusory allegations that "Doe" defendants 11-15 had actual knowledge of plaintiff's medical condition and failed to adequately respond. The court agrees.

Indeed, to establish an Eighth Amendment claim based upon "deliberate indifference," a plaintiff must show, among other things, that the delay or denial of medical treatment led to further injury. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference"). Here, plaintiff does not suggest that "Doe" defendants' delay or denial of additional medical treatment led to further injury. Rather, plaintiff alleges only that he experienced "prolonged" pain and suffering. (ECF No. 48 at 22).

The court finds such allegations insufficient to state a cognizable § 1983 Eighth Amendment claim against "Doe" defendants 11-15. Accordingly, plaintiff's tenth cause of action will be dismissed for failure to state a claim.

### b.  *Plaintiff's state law tort claims*

Plaintiff's fifth, sixth, seventh, eighth, and ninth causes of action assert state law tort claims against CO Galbiso and "Doe" defendants 1-10. (ECF No. 48 at 20). Defendants argue in their motion to dismiss that, upon dismissing plaintiff's federal law claims, the court should decline to exercise supplemental jurisdiction over the state law claims. (ECF No. 56 at 11–12). Because the court has not dismissed all of plaintiff's federal law claims, the court will decline to dismiss

plaintiff's state law claims on those grounds. Accordingly, defendants' motion to dismiss is denied with respect to plaintiff's fifth, sixth, seventh, eighth, and ninth causes of action.

**IV.   Conclusion**

As a result of the foregoing, plaintiff's first, fourth, and tenth claims are dismissed in their entirety. Conversely, plaintiff's second, third, fifth, sixth, seventh, eighth, and ninth claims survive against defendants in their individual capacities only.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motion to dismiss (ECF No. 56) be, and the same hereby is, GRANTED in part and DENIED in part.

DATED November 27, 2018.

_____
UNITED STATES DISTRICT JUDGE